EXHIBIT 5

## PARAGRAPH 16.  CONFIDENTIALITY AND DATA PROTECTION

16.1   The information contained in this Agreement and any subsequent amendments or supplements hereto, as well as any other information relating to the Parties' business (including, but not limited to, financial, operational, personal data of the Parties' respective employees, officers or customers, operating manuals, procedures and know-how) is strictly confidential and must not be shared with any third party other than a Party's legal and financial advisers and auditors who are bound by professional confidentiality rules, or as may be required by relevant laws and orders of courts or administrative bodies.

16.2   The Handling Company hereby agrees and undertakes not to make, issue or dispatch any public announcement or public communication (including, but not limited to responding to inquiries by any press, radio, television or other media) relating to any aspect of the Carrier's business or operations (including, but not limited to, the number of passengers carried, any incidents, accidents or occurrences involving the Carrier's aircraft, passengers or employees) without the prior written consent of the Carrier, except responding to inquiries by authorities conducting an official investigation where the Handling Company is required by law to make such statements. In the case of any such disclosure to regulatory authorities, the Handling Company shall notify the Carrier in advance of such disclosure and consult with the Carrier over the need for and scope of any such disclosure and where disclosure is required, the Handling Company shall seek to impose a confidentiality requirement where the confidential information is not subject to statutory restrictions on disclosure by the recipient. The Handling Company will be responsible for any breach of the foregoing provision by its employees, officers, representatives, agents or subcontractors.

16.3   Prior written consent to any disclosure shall be obtained from the Carrier.  In the event of any breach of the publicity restrictions set out in Section 16.2 above, the Handling Company will be liable to pay a lump sum compensation to the Carrier as indemnification, in the amount of USD 10,000 (ten thousand US Dollars) per event. This does not preclude the Carrier from seeking compensation for damages in excess of the amount of the lump sum compensation.

16.4   The Handling Company is responsible for the security of the personal data, including but not limited to personally identifiable information, of the Carrier's passengers ("Data") in its custody and possession. The Handling Company agrees that beginning on the date that the services commence under this Agreement, and continuing as long as the Handling Company possesses, stores, transmits or processes Data, the Handling Company shall not do or omit to do anything which may cause the Carrier to be in breach of any applicable privacy and security laws (including but not limited to data protection laws and electronic communications data protection and privacy laws) and shall employ and maintain appropriate and adequate technological, physical, administrative, organizational and procedural safeguards so as to: (a) protect the confidentiality, integrity or availability of Data and (b) comply with the requirements of all privacy and security laws.

16.5   To the extent that the Handling Company processes Data as the Carrier's data processor under this Agreement, the Handling Company shall (i) only act on the